FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2025 MAR 14  PM 3: 13

OFFICE OF THE CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

AARON T. LUNEKE,

    Defendant.

Case No. 8:24-cr-124

**MOTION TO QUASH OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**

Nonparty Bank of the Valley, ("Bank") moves to quash the nonparty criminal subpoena which Defendant, Aaron T. Luneke ("Defendant") served on Bank employee, Jason V. Lavicky, on or about November 22, 2024, which commands Bank to respond by producing documents related to no less than sixteen different categories, many with multiple subparts, that would result in the production of thousands of documents by November 29, 2024, (the "Subpoena"). The Subpoena should be quashed for many reasons including that it is not authorized by the rules of discovery, seeks information that could not be relevant to this case and could not lead to the discovery of admissible evidence, is overly-broad and unduly burdensome, and is in no way limiting the burden or expense to the nonparty on whom it was issued. Such an unreasonable and oppressive subpoena should be quashed pursuant to FED. R. CRIM. P. 17(c) and local rule 17.4.

In the alternative, if the Court does not enter an order quashing the Subpoena, a Protective Order should be entered pursuant to FED. R. CRIM. P. 16(d) and local rule 17.2(b)(3). Bank respectfully requests the Court grant its Motion and quash the Subpoena, or alternatively, grant the Motion and enter a Protective Order protecting

1

Bank from the overbroad and unduly burdensome discovery requests within the Subpoena. In further support of its Motion, Bank states as follows:

1.    A true and correct copy of the Subpoena and accompanying letter served on Jason V. Lavicky is part of the record as Exhibit 1 to the Declaration of Kenneth W. Hartman (Hartman Dcl.). The Subpoena purports to command an individual employee of Bank, Jason V. Lavicky, to broadly produce extensive private documents of the Bank, relating to businesses/customers, individuals, and Bank employees to the office of Defendant's counsel. The Subpoena broadly commands Bank to produce the following records:

> 1. Bank statements with imaged copies of all checks for:
>     a. Living Waters RE, LLC
>     b. Shine Express Wash, LLC
>     c. Aaron T. Luneke
>
> 2. All communication including but not limited to emails, text messages, records of phone calls, mailed notifications, related to deposit account administration for Living Waters RE, LLC, Shine Express Wash, LLC, and Aaron T. Luneke. The requested documentation includes but is not limited to the following:
>     a. CIP opening process
>     b. restriction of funds
>     c. account closing
>     d. account reopening
>     e. final closing process
>
> 3. All electronic and written communication from any employee, executive or principal of Bank of the Valley pertaining to the Living Waters RE, LLC involving prospective lenders to refinance the Living Waters RE, LLC credit
>     a. This includes, but is not limited to, emails, text messages, phone calls, etc. involving Jason Lavicky
>
> 4. Bank of the Valley documentation of all communication with or regarding Aaron Luneke, including but not limited to: Emails,

text messages, record of phone calls to and from Mr. Luneke, and notifications mailed to Mr. Luneke.

5. Bank of the Valley documentation of all internal correspondence regarding Living Waters RE, LLC, Shine Express Wash, LLC, and Aaron T. Luneke

6. Complete personnel files including job Descriptions, employment dates, annual reviews, corrective actions, related interests, position description, etc. for the following:
a. Jason Lavicky (President)
b. John DuBray III (Senior Executive Vice President & Chief Operations Officer)
c. Eli Vosler (Chief Credit Officer, former Credit Analyst)
d. Bill Brookhouser (Sr. Credit Analyst)
e. Micaela Wegener (Compliance Officer)
f. Aaron Luneke (Chief Financial Officer)

7. A complete copy of the hard drives from any work computer, laptop, or iPad assigned to Aaron Luneke.

8. A complete copy of all Aaron Luneke's work emails, specifically the account of aluneke@bankofthevalley.com.

9. The complete, and unabridged loan file for Living Waters RE, including but not limited to
a. All correspondence regarding the loan
b. Any appraisals ordered or received
c. Internal loan reports for missing loan documentation

10. Loan Committee meeting packets for time period February 2020 – October 2022, including:
a. agenda, minutes, and internal reporting documents including Large Deposit Report, Loans Past Due Report.

11. Board meeting agenda and minutes, including:
a. February 2020 and March 2020 – Loan Proposal Memo ("LPM") presented to Bank of the Valley Board of Directors
b. April & May 2020 (Loan #[XXXXX] approved ($[XXXXX]))
c. September & October 2020 (Loan #[XXXXX] approved ($[XXXXX])
d. January & February 2021(Loan #[XXXXX] approved ($[XXXXX]))

3

e. May & June 2021(Loan #[XXXXX] – [XXXXX], and Loan [XXXXX] – $[XXXXXX])

f. September & October 2022 (Loan #'s [XXXXX] & [XXXXX])

12. Executive Committee Meeting minutes:

a. February 2020 and March 2020 – Loan Proposal Memo ("LPM") presented to Bank of the Valley Board of Directors)

b. April & May 2020 (Loan #[XXXXX] approved ([XXXXX]))

c. September & October 2020 (Loan #[XXXXX] approved ([XXXXX]))

d. January & February 2021(Loan [XXXXX] approved ([XXXXX]))

e. May & June 2021(Loan #[XXXXX] – $[XXXXX], and Loan #[XXXXX] – $[XXXXX])

f. September & October 2022 (Loan #'s [XXXXX] & [XXXXX]) are paid off, in-full by NBC Bank

g. April – October 2022

13. Any and all Suspicious Activity Reports ("SAR") and supporting documentation related to A. Luneke.

14. FDIC and State of Nebraska Department of Banking Exam reports from 2015 – 2018, and 2019 – 2022 related to Aaron Luneke.

15. The John Hancock Bank of the Valley Plan sponsor documents, specifically the Trustee listing of Authorized Users and their permissions / responsibilities.

16. Aaron Luneke's personal workpapers related to the CARES Act that were retained by Bank of the Valley upon termination.

Hartman Dcl, Exhibit 1.

2.    A criminal subpoena must meet specific requirements and cannot read like civil discovery requests. *United States v. Rosenschein*, 2020 WL 205880, at *2 (D.N.M., 2020). The Supreme Court established long ago that Rule 17(c) "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United*

4

*States,* 341 U.S. 214, 220, 71 S. Ct. 675, 679, 95 L. Ed. 879 (1951). To warrant the issuance of a subpoena duces tecum, a party must show that "(1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity." *U.S. v. Hang*, 75 F.3d 1275, 1283 (8th Cir.1996). When requests reflect a "mere hope" that the desired documents would produce favorable evidence, a Rule 17(c) subpoena cannot properly be issued. *U.S. v. Hang*, 75 F.3d 1275, 1283 (8th Cir.1996).

3.    The broad and all-encompassing commands of the Subpoena are in no way specific or limited but merely reflect Defendant's strategy, a mere hope that any of the numerous categories of information commanded may produce favorable evidence without narrowing the command to any particular relevant documentation or any temporal limitation pertaining to this matter. Defendant cannot support such a broad and irrelevant fishing expedition based upon the mere hope of uncovering impeachment material. *United States v. Dornsbach*, 2023 WL 2480976, at *5 (D. Minn., 2023) ("In the context of Rule 17(c) generally the need for evidence to impeach witnesses is insufficient to require production in advance of trial "); *U.S. v. Shanahan*, 252 F.R.D. 536, 541 (E.D. Mo., 2008) ("the request for the materials is made in good faith and not as a general fishing expedition"); *U.S. v. Hang*, 75 F.3d 1275, 1283–84 (8th Cir.,1996) (Rule 17 Subpoena requires specificity and relevance demanding more than merely the title of a document and conjecture as to its contents). For example, the Subpoena seeks information regarding many individuals. Hartman Dcl., Exhibit 1 at ¶ 6. Notably, only one of the individuals named is a party to this lawsuit. The

5

command to provide so much information in so many areas is clearly a fishing expedition.

4.    The Subpoena contains numerous requests utilizing phrases such as "includes, but is not limited to" and "all communication." For example, ¶¶ 2,3, and 13 respectively command Bank to produce, "all communication including but not limited to", "all electronic and written communication", and "any and all." Hartman Dcl, Exhibit 1 at ¶¶ 2,3, and 13. "As a general rule, requests for "any and all documents" are emblematic of a discovery request or of a fishing expedition. *U.S. v. Shanahan*, 252 F.R.D. 536, 541 (E.D.Mo., 2008) ("employing terms like 'any and all documents' or 'including, but not limited to' [are] indicia of a fishing expedition"). The Subpoena as prepared is clearly a fishing expedition which fails to be tailored with specificity to the criminal action at hand.

5.    In an effort to resolve the many issues presented by the overbroad and unduly burdensome Subpoena in good faith and without Court intervention, Bank's attorney held a conference with Defendant's counsel on December 4, 2024. Hartman Dcl., at ¶ 6. Bank's attorney then confirmed in email on December 18, 2024, to Defendant that the requests were overbroad and unduly burdensome explaining the thousands of documents the Subpoena encompasses. Hartman Dcl., at ¶ 7, Exhibit 2 at pg. 14 – 16. Bank's attorney even endeavored to reach an agreement with Defendant regarding search terms to narrow the broad requests and requested a Protective Order be entered. Hartman Dcl., at ¶ 7, Exhibit 2 at pg. 14 – 16. Bank's attorney followed up with Defendant on December 30th to further the parties'

6

attempts to negotiate without waiving any objection by Bank's attorney. Hartman Dcl., at ¶ 8, Exhibit 2 at pg. 13 – 14. On January 14, 2025, Defendant responded simply commanding Bank to produce the documents requested and without providing search terms to narrow the documents as Bank requested. Hartman Dcl., at ¶ 9, Exhibit 2 at pg. 10 – 13.

6.      As part of the meet and confer, Bank's attorney explained the extremely overly broad and unduly burdensome nature of the Subpoena by addressing the information sought with regard to Aaron Luneke's emails and the size and number of files on a computer hard drive. By phone and by email, Bank's counsel explained to defense counsel as follows:

a.      Total emails from hire date: 64,149
b.      Total emails from Jan 1, 2019 to termination: 61,387
c.      Total size of email account in windows profile: 16 GB
d.      Total size of windows profile: 26 GB
e.      Total size of hard drive: 177 GB
f.      Total files on hard drive: 627,917

Hartman Dcl., at ¶ 7, Exhibit 2 at pg. 15.

7.      Not until February 4, 2025, did Defendant provide a list of search terms. Hartman Dcl., at ¶ 10, Exhibit 2 at pg. 7 – 8; Exhibit 3. Specifically, Defendant provided over 300 search terms to Bank, and Defendant admitted to Bank "these terms are expansive because the information we are looking for is not merely direct evidence supporting our defense. We also believe that there is potential impeachment evidence." Hartman Dcl., at ¶ 10, Exhibit 2 at pg. 7; Exhibit 3. Defendant clearly exceeds the limitation of Rule 17(c) in seeking such broad information through the use of hundreds of search terms for the purpose of impeachment. *United States v.*

*Dornsbach*, 2023 WL 2480976, at *5 (D.Minn., 2023). And, the hundreds of search terms on their face do nothing to limit the amount of information being sought by the Subpoena. Hartman Dcl., at ¶ 10, Exhibit 3. The search terms are just further evidence of a fishing expedition.

8.    Furthermore, of the over 300 search terms provided, many raise a red flag. For example, Defendant's seek communication from Bank's previous counsel Randy Wright as well as include the terms "FDIC Exam" and "suspicious" and "reporting" which clearly seeks the disclosure of SAR information. Hartman Dcl., Exhibit 3 at pg. 1 – 4. Not only are the search terms expansive, broad, and unrefined, but seek privileged and protected information. NEB. REV. STAT. § 8-108; 12 C.F.R. § 353.3. The search terms are by no means a meaningful means to limit the Subpoena to specific identifiable information.

9.    However, Bank's counsel did agree to provide certain documents, including those directly related to Aaron Luneke, Living Waters RE, LLC, and Shine Express Wash, LLC once Defendant executed a Protective Order. Hartman Dcl., at ¶ 11, Exhibit 2 at pg. 9. The parties agreed that Bank's production of the narrow categories of information, did not waive any objection to the Subpoena. Hartman Dcl., at ¶ 12, Exhibit 2 at pg. 8. After entry of the Protective Order on February 24, 2025, Bank produced the limited production to Defendant. Hartman Dcl., at ¶ 12. That production was Bates numbered BOTV_000001-10269.

10.    Despite Bank's numerous efforts to narrow the commanded documentation, Defendant's counsel sent an email to Bank's counsel on March 13,

8

2025 insisting Bank had acted in bad faith, had not produced documents responsive to the entire Subpoena, and threatening that counsel would file a Motion to Compel seeking fees. Hartman Dcl., Exhibit 2 at pg. 1 – 4. Bank, a nonparty that is merely seeking to protect the confidentiality of its banking records and from being unduly burdened from an overly broad subpoena was forced to file this Motion.

11.    The Subpoena commanding Bank produce thousands of documents which require close review is unduly burdensome and oppressive, without even considering the confidential information contained in the files regarding bank customers, bank financials, and employees with absolutely no bearing on this case. The lack of bearing to the case only accentuates the burden placed on Bank regarding the amount of information the Subpoena seeks. Furthermore, Defendant fails to assign any temporal limitation or state a discrete kind of documentation with any relation to the matter at hand. Again, Defendant "hopes" to find favorable evidence without limiting the oppressive burden placed on nonparty Bank in commanding the production. *U.S. v. Shanahan*, 252 F.R.D. 536, 543 (E.D.Mo., 2008) (finding a document request lacked the required specificity when approximately 20,000 pages of documents would relate to the request).

12.    Defendant hopes to find favorable information in the hundreds of thousands of files it commanded Bank to produce, with no regard for the important privacy concerns in the records of a financial institution. For example, Defendant seeks Loan Committee meeting packets without any categories or specificity as to the

9

relevance of any of the documents Defendant commands Bank to produce. Hartman Dcl., Exhibit 1 at ¶ 10. The Court should quash the Subpoena on this basis alone.

13.    Additionally, Defendant cannot meet his burden to require the production requested by the Subpoena. The Defendant must show: (1) the documents are evidentiary; (2) the materials could not be procured through other means, before trial, by the exercise of due diligence; (3) the party cannot adequately prepare for trial without advance production of the documents, and the failure to obtain the documents may tend to unreasonably delay the trial; and (4) the request for the materials is made in good faith and not as a general "fishing expedition." *See Nixon,* 418 U.S. at 699–700, 94 S. Ct. 3090. Defendant's commands seemingly ignore all of the documents already in the hands of the government as a result of its investigation and prosecution. Hartman Dcl., at ¶¶ 2 – 4. Clearly no effort was made to limit the burden on this nonparty by utilizing what must already be part of discovery in this criminal case. Defendant cannot meet his burden.

14.    Defendant possessed the ability to narrow the scope of the requests in the Subpoena regarding the multitude of documents previously produced to the government, but failed to do so. *See Nixon,* 418 U.S. at 699–700, 94 S. Ct. 3090. The documents previously produced to the government can easily be obtained without repeatedly requesting a nonparty unreasonably repeat previous productions, which weighs in favor of quashing the Subpoena.

15.    A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive, or if the

10

subpoena calls for privileged matter. FED. R. CRIM. P. 17(c)(2). *U.S. v. Shanahan*, 252 F.R.D. 536, 540 (E.D. Mo., 2008).

16.     The requests clearly seek privileged information. For example, Subpoena requests ¶¶ 13,14 command Bank to produce, "13. Any and all Suspicious Activity Reports ("SAR") and supporting documentation related to A. Luneke" and "14. FDIC and State of Nebraska Department of Banking Exam reports from 2015-2016, and 2019-2020 related to Aaron Luneke." Hartman Dcl., Exhibit 1, at ¶¶ 13, 14. State and federal law prohibit Bank's disclosure of the commanded documents.

17.     An FDIC–supervised institution subpoenaed or otherwise requested to disclose a suspicious activity report or the information contained in a suspicious activity report shall decline to produce the suspicious activity report or to provide any information that would disclose that a suspicious activity report has been prepared or filed. 12 C.F.R. § 353.3.

18.     Likewise, Nebraska law is clear, any examination or report from the Federal Deposit Insurance Corporation, the Federal Reserve Board, the Comptroller of the Currency, or the Consumer Financial Protection Bureau remains the property and confidential record of the foreign state agency or federal agency which provided the examination or report to the director. A request or subpoena for any such examination or report shall be directed to the foreign state agency or federal agency which provided the examination or report to the director. NEB. REV. STAT. § 8-108. By requesting the FDIC reports, Defendant seeks the disclosure of confidential information which Bank cannot produce.

19.    Similarly, Nebraska banking exam reports are confidential records of the Department of Banking and Finance and not subject to disclosure in this case. *See* NEB. REV. STAT. § 8-112; § 8-101.03(11). Thus, the banking examination reports for Bank are privileged and protected from disclosure as commanded. The Subpoena should be quashed on this basis alone.

20.    Additionally, in conjunction with evaluating the specificity of the Subpoena requests, the Court may consider policy concerns in determining whether the subpoena takes in too much irrelevant material to withstand a challenge to the subpoena's reasonableness under Rule 17(c). *In re Grand Jury Proceedings: Subpoenas Duces Tecum*, 827 F.2d 301, 306 (8th Cir.1987). Such policy concerns the Court should consider include the evaluation of the discovery requests at issue to determine potentially adverse effects on Bank's business should it be compelled to produce the overabundance of irrelevant data concerning its customers. *See In re Grand Jury Proceedings: Subpoenas Duces Tecum*, 827 F.2d 301, 306 (8th Cir.1987).

WHEREFORE, for all the reasons listed hereinabove, Bank respectfully requests the Court quash the Subpoena as issued. Alternatively, Bank prays for the entry of an appropriate Protective Order. Bank further prays for a conference with the Court at its earliest opportunity to determine whether it can forestall the time and expense required for full briefing on this issue in the hopes of preventing the nonparty Bank from being saddled with continued unnecessary costs.

12

Dated this 14th day of March, 2025.

BANK OF THE VALLEY, Respondent.

By:   /s/ Kenneth W. Hartman
        Kenneth W. Hartman (NE# 21954)
        Alexandra A. Speakar (NE# 27937)
of    BAIRD HOLM LLP
        1700 Farnam Street, Suite 1500
        Omaha, NE 68102-2068
        Phone: 402-344-0500
        Email: khartman@bairdholm.com
        Email: aspeakar@bairdholm.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, I hand-delivered the foregoing document with the Clerk of the Court and sent an electronic copy via email to the following:

Keith Dornan
keith@dltlawyers.com

Sean P. Lynch
Sarah A. Hinrichs
Sean.lynch@usdoj.gov
Sarah.hinrichs@usdoj.gov

/s/ Kenneth W. Hartman

13