**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

AARON T. LUNEKE,

      Defendant.

Case No. 8:24-cr-124

**RESPONDENT BANK OF THE
VALLEY'S BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO
COMPEL**

Defendant's Rule 17(c) Subpoena is nothing more than a fishing expedition based upon his mere hope of uncovering favorable evidence and deserves to be quashed, not compliance compelled. Defendant cannot show that the broad and all-encompassing information sought from nonparty Respondent Bank of the Valley meets the standard set by the Supreme Court for Rule 17(c) subpoenas. *U.S. v. Nixon*, 418 U.S. 683, 699–700 (1974). The Court should deny Defendant's Motion to Compel, grant Respondent Bank of the Valley's Motion to Quash, and award Bank of the Valley its fees and costs.

## BACKGROUND

Defendant served the Subpoena at issue upon nonparty Respondent Bank of the Valley ("Bank") on or about November 22, 2024. A true and correct copy of the Subpoena and accompanying letter served on Jason V. Lavicky is part of the record as Exhibit 1 to the Declaration of Kenneth W. Hartman (Hartman Dcl.). (Filing No. 48). The Subpoena purports to command an individual employee of Bank, Jason V. Lavicky, to broadly produce extensive private documents of the Bank, as well as other businesses/customers, individuals, and Bank members to the office of Defendant's

counsel. The Subpoena commands Bank to produce a vast amount of information shown as follows through the overly broad, all-encompassing, and nonspecific requests:

1. Bank statements with imaged copies of **all** checks for:
   a. Living Waters RE, LLC
   b. Shine Express Wash, LLC
   c. Aaron T. Luneke

2. **All** communication **including but not limited to** emails, text messages, records of phone calls, mailed notifications, related to deposit account administration for Living Waters RE, LLC, Shine Express Wash, LLC, and Aaron T. Luneke. The requested documentation **includes but is not limited to** the following:
   a. CIP opening process
   b. restriction of funds
   c. account closing
   d. account reopening
   e. final closing process

3. **All** electronic and written communication from **any** employee, executive or principal of Bank of the Valley pertaining to the Living Waters RE, LLC involving prospective lenders to refinance the Living Waters RE, LLC credit
   a. This **includes, but is not limited to**, emails, text messages, phone calls, etc. involving Jason Lavicky.

4. Bank of the Valley documentation of **all** communication with or regarding Aaron Luneke, **including but not limited to**: Emails, text messages, record of phone calls to and from Mr. Luneke, and notifications mailed to Mr. Luneke.

5. Bank of the Valley documentation of **all** internal correspondence regarding Living Waters RE, LLC, Shine Express Wash, LLC, and Aaron T. Luneke

6. **Complete** personnel files including job Descriptions, employment dates, annual reviews, corrective actions, related interests, position description, etc. for the following:
   a. Jason Lavicky (President)
   b. John DuBray III (Senior Executive Vice President & Chief Operations Officer)

    c. Eli Vosler (Chief Credit Officer, former Credit Analyst)
    d. Bill Brookhouser (Sr. Credit Analyst)
    e. Micaela Wegener (Compliance Officer)
    f. Aaron Luneke (Chief Financial Officer)

7. A **complete** copy of the hard drives from **any** work computer, laptop, or iPad assigned to Aaron Luneke.

8. A **complete** copy of **all** Aaron Luneke's work emails, specifically the account of aluneke@bankofthevalley.com.

9. The **complete**, and **unabridged** loan file for Living Waters RE, **including but not limited** to
    a. **All** correspondence regarding the loan
    b. **Any** appraisals ordered or received
    c. Internal loan reports for missing loan documentation

10. Loan Committee meeting packets for time period February 2020 – October 2022, including:
    a. agenda, minutes, and internal reporting documents including Large Deposit Report, Loans Past Due Report.

11. Board meeting agenda and minutes, including:
    a. February 2020 and March 2020 – Loan Proposal Memo ("LPM") presented to Bank of the Valley Board of Directors
    b. April & May 2020 (Loan #[XXXXX] approved ($[XXXXX]))
    c. September & October 2020 (Loan #[XXXXX] approved ($[XXXXX]))
    d. January & February 2021(Loan #[XXXXX] approved ($[XXXXX]))
    e. May & June 2021(Loan #[XXXXX] – [XXXXX], and Loan [XXXXX] – $[XXXXXX])
    f. September & October 2022 (Loan #'s [XXXXX] & [XXXXX])

12. Executive Committee Meeting minutes:
    a. February 2020 and March 2020 – Loan Proposal Memo ("LPM") presented to Bank of the Valley Board of Directors)
    b. April & May 2020 (Loan #[XXXXX] approved ([XXXXX]))
    c. September & October 2020 (Loan #[XXXXX] approved ([XXXXX]))

d. January & February 2021(Loan [XXXXX] approved ([XXXXX]))
e. May & June 2021(Loan #[XXXXX] – $[XXXXX], and Loan #[XXXXX] – $[XXXXX])
f. September & October 2022 (Loan #'s [XXXXX] & [XXXXX]) are paid off, in-full by NBC Bank
g. April – October 2022

13. **Any and all** Suspicious Activity Reports ("SAR") and supporting documentation related to A. Luneke.

14. FDIC and State of Nebraska Department of Banking Exam reports from 2015 – 2018, and 2019 – 2022 related to Aaron Luneke.

15. The John Hancock Bank of the Valley Plan sponsor documents, specifically the Trustee listing of Authorized Users and their permissions / responsibilities.

16. Aaron Luneke's personal workpapers related to the CARES Act that were retained by Bank of the Valley upon termination.

(Filing No. 48, Hartman Dcl., Exhibit 1) (emphasis added).

In a good faith effort to limit the burden on nonparty Bank in complying with Defendant's sweepingly broad and all-encompassing Subpoena, Bank's attorney met and conferred with Defendant's counsel on December 4, 2024. (Filing No. 48, Hartman Dcl., at ¶ 6). Bank's attorney then confirmed by email on December 18, 2024, to Defendant's Counsel that Bank objected to the requests due to their overbroad and burdensome nature and explained the thousands of documents the Subpoena encompasses. (Filing No. 48, Hartman Dcl., at ¶ 7, Exhibit 2 at pg. 14 – 16). Defendant's attempt to command Bank produce the entire email file of Defendant and hard drive of Defendant's work computer, alone, yielded an avalanche of data:

a. Total emails from hire date: 64,149

b. Total emails from Jan 1, 2019 to termination: 61,387

4

    c.  Total size of email account in windows profile: 16 GB

    d.  Total size of windows profile: 26 GB

    e.  Total size of hard drive: 177 GB

    f.  Total files on hard drive: 627,917

(Filing No. 48, Hartman Dcl., at ¶ 7, Exhibit 2 at pg. 15).

Given the broad and all-encompassing scope of the Subpoena, Bank's attorney worked with Defendant's counsel in an attempt to identify specific documents from the hundreds of thousands encompassed by the requests. As a result, Bank's attorney endeavored to reach an agreement with Defendant's Counsel regarding search terms to narrow the broad requests and requested a Protective Order be entered. (Filing No. 48, Hartman Dcl., at ¶ 7, Exhibit 2 at pg. 14 – 16). Bank's attorney followed up with Defendant's Counsel on December 30th to further the parties' attempts to negotiate without waiving any objection by Bank's attorney. (Filing No. 48, Hartman Dcl., at ¶ 8, Exhibit 2 at pg. 13 – 14). On January 14, 2025, Defendant's Counsel responded simply commanding Bank to produce the documents requested and without providing search terms to narrow the documents as Bank requested. (Filing No. 48, Hartman Dcl., at ¶ 9, Exhibit 2 at pg. 10 – 13).

Not until February 4, 2025, did Defendant's Counsel provide a list of over 300 search terms to Bank, and Defendant admitted to Bank "these terms are expansive because the information we are looking for is not merely direct evidence supporting our defense. We also believe that there is potential impeachment evidence." (Filing No. 48, Hartman Dcl., at ¶ 10, Exhibit 2 at pg. 7 – 8; Exhibit 3) (emphasis added). By Defendant's own admission, the Subpoena requests clearly exceed the limitation of

Rule 17(c) in seeking such broad information through the use of hundreds of search terms for the purpose of impeachment. *U.S. v. Nixon*, 418 U.S. 683, 700 (1974); *United States v. Dornsbach*, No. 22-cr-00048, 2023 WL 2480976, at *5 (D. Minn., March 13, 2023).

However, to further the parties' negotiations Bank's counsel agreed to provide certain documents, including those directly related to Aaron Luneke, Living Waters RE, LLC, and Shine Express Wash, LLC once Defendant executed a Protective Order. (Filing No. 48, Hartman Dcl., at ¶ 11, Exhibit 2 at pg. 9). The parties agreed that Bank's production of the narrow categories of information, did not waive any objections to the Subpoena. (Filing No. 46, Def. Mot. to Compel at ¶ 7); (Filing No. 48, Hartman Dcl., at ¶ 12, Exhibit 2 at pg. 8). After entry of the Protective Order on February 24, 2025, Bank produced the limited production to Defendant. (Filing No. 48, Hartman Dcl., at ¶ 12). That production was made subject to the protective order and Bates numbered **BOTV_000001-10269**.

Despite Bank's numerous efforts to narrow the commanded documentation, Defendant's counsel sent an email to Bank's counsel on March 13, 2025 insisting Bank had acted in bad faith, had not produced documents responsive to the entire Subpoena, and counsel would file a Motion to Compel seeking fees. (Filing No. 48, Hartman Dcl., Exhibit 2 at pg. 1 – 4). Bank, a nonparty that is merely seeking to comply with federal and state law, to protect the confidentiality of its banking records, and from being unduly burdened from an overly broad subpoena was forced to file its Motion to Quash in response. (Filing No. 47; Filing No. 48). As a result of

the parties' numerous meet and confer efforts, Defendant's Motion to Compel narrowed the requests at issue to Request Numbers 3, 4, 5, 6, 14, 15, and 16. (Filing No. 46). Since the parties' filed their Motions, Counsel for Bank and Defendant continue to meet and confer in an effort to resolve the outstanding discovery issues and narrow the list of documentation sought by Defendant to a reasonable request meeting the requirements of Rule 17(c).

## STANDARD

A Rule 17(c) Subpoena cannot read like civil discovery requests and does not authorize a party to engage in a fishing expedition. *United States v. Rosenschein*, CR 16-4571 JCH, 2020 WL 205880, at *2 (D.N.M., January 14, 2020); *U.S. v. Shanahan*, 252 F.R.D. 536, 541 (E. D. Mo., 2008). A Rule 17(c) Subpoena cannot be supported based upon Defendant's mere hope of uncovering favorable evidence. *U.S. v. Bradford*, 806 F.3d 1151, 1155 (8th Cir., 2015); *U.S. v. Hang*, 75 F.3d 1275, 1283 (8th Cir., 1996)*; United States v. Dornsbach*, No. 22-cr-00048, 2023 WL 2480976, at *5 (D. Minn., March 13, 2023).

Defendant bears the burden to establish the Rule 17(c) Subpoena clears three hurdles: (1) relevancy; (2) admissibility; (3) specificity. *U.S. v. Nixon*, 418 U.S. 683, 700 (1974). A Rule 17(c) Subpoena cannot command the production of a broad array of documents, rather, the Defendant must seek access to a discrete set of existing materials. *United States v. Jackson,* 155 F.R.D. 664, 668 (D. Kan., 1994); *U.S. v. Shepard*, No. 4:09 CR 423, 2010 WL 750110, at *2 (E. D. Mo., February 26, 2010). And, relevance demands more than the potential for impeachment or credibility evidence,

7

which simply is not enough to command production under Rule 17(c). *U.S. v. Nixon*, 418 U.S. 683, 700 (1974); *United States v. Dornsbach*, No. 22-cr-00048, 2023 WL 2480976, at *5 (D. Minn., February 21, 2023). The specificity and relevance requirements demand more than the title of a document and conjecture concerning its contents. *Shepard*, 2010 WL 750110, at 1.

The specificity requirement ensures that a Rule 17(c) subpoena will not be used just to see "what may turn up." *United States v. Libby,* 432 F. Supp. 2d 26, 32 (D.D.C., 2006). The specificity requirement also ensures that a subpoena will only be used to secure, for trial, a sharply defined group of documents. *Shepard*, 2010 WL 750110, at *1. "Subpoenas should not be worded in nonexclusive and open-ended terms," such as "terms like 'any and all documents' or 'including, but not limited to'" all of which indicate the subpoena is a fishing expedition. *U.S. v. Shanahan*, 252 F.R.D. 536, 541 (E. D. Mo., 2008). Indeed, the documents sought must be specifically identified.

## ARGUMENT

**A.    Defendant Seeks Information Subject to an Unqualified Discovery and Evidentiary Privilege that Cannot be Waived.**

Shown throughout the commands in the Subpoena, and in Defendant's Motion to Compel, is the command for Bank to produce materials purporting to relate to Suspicious Activity Reports and investigations related thereto. *See* (Filing No. 48, Hartman Dcl, Exhibit 1 at Requests No. 4, 13, and 14); (Filing No. 46, Def. Mot. to Compel at ¶ 10(b, d)). Defendant compels Bank to provide any and all Suspicious Activity Reports ("SAR") and supporting documentation related to Defendant. (Filing No. 48, Hartman Dcl, Exhibit 1 at ¶ 13, Request No. 13). Defendant also seeks FDIC

and state banking exam reports. (Filing No. 46 Def. Mot. to Compel at ¶ 10(b, d), Request No. 14). Defendant is essentially seeking all information related to any and all potential SAR filed by Bank related to Defendant. The law does not allow the disclosure of such information; it does not even allow for the disclosure of whether a SAR was ever filed. 31 U.S.C § 5318(g)(2)(A)(i). Federal and state law also does not allow Bank to disclose examination reports or other supervisory correspondence. 12 C.F.R. § 309.6; NEB. REV. STAT. § 8-112; § 8-101.03(11). As Bank is expressly prohibited from disclosing the information requested, Defendant's Motion to Compel should be denied.

There is no doubt that Bank is prohibited from even disclosing whether Bank filed a SAR, let alone producing a SAR as commanded by Defendant. 31 U.S.C § 5318(g)(2)(A)(i); 12 C.F.R. § 353.3(g); 12 C.F.R. § 21.11(k); 31 C.F.R. § 1020.320(e). Bank is specifically prohibited by statute from disclosure as follows:

> If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency--
>
> **(i)** neither the financial institution, director, officer, employee, or agent of such institution (whether or not any such person is still employed by the institution), nor any other current or former director, officer, or employee of, or contractor for, the financial institution or other reporting person, may notify any person involved in the transaction that the transaction has been reported **or otherwise reveal any information that would reveal that the transaction has been reported.**

31 USCA § 5318(g)(2)(A)(i) (emphasis added).

Bank must decline the production of any SAR or to provide **any information** that would disclose that Bank ever prepared or filed a SAR. The regulations for the

9

Federal Deposit Insurance Corporation ("FDIC") and the Financial Crimes Enforcement Network ("FinCen") equally prohibit Bank from disclosing SARs or information related to a SAR as follows:

> Confidentiality of suspicious activity reports. Suspicious activity reports are confidential. An FDIC–supervised institution subpoenaed or otherwise requested to disclose a suspicious activity report or the information contained in a suspicious activity report **shall decline to produce the suspicious activity report or to provide any information that would disclose that a suspicious activity report has been prepared or filed** citing this part, applicable law (e.g., 31 U.S.C. 5318(g)), or both, and notify the appropriate FDIC regional office (Division of Supervision and Consumer Protection (DSC)).

12 C.F.R. § 353.3(g) (emphasis added). Likewise regarding FinCen:

> No bank, and no director, officer, employee, or agent of any bank, shall disclose a SAR **or any information that would reveal the existence of a SAR**. Any bank, and any director, officer, employee, or agent of any bank that is subpoenaed or otherwise **requested to disclose a SAR or any information that would reveal the existence of a SAR, shall decline to produce the SAR or such information**, citing this section and 31 U.S.C. 5318(g)(2)(A)(i), and shall notify FinCEN of any such request and the response thereto.

31 C.F.R. § 1020.320(e)(1)(i) (emphasis added).

Taken together, the statutory and regulatory protections create an unqualified discovery and evidentiary privilege, which Bank cannot waive and courts have "refused to order an exception to that privilege." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2nd Cir., 1999); *see Cotton v. Private Bank and Trust Co.*, 235 F. Supp. 2d 809, 813-15 (N. D. Ill., 2002) (refusing to allow production of SAR or documents that would disclose whether a SAR was being prepared or filed including those for the purpose of investigating or drafting a possible SAR); *Gregory v. Bank One Corp. Inc.*, 200 F. Supp. 2d 1000, 1002-03 (S. D. Ind., 2002) (applying the statutes and

10

regulations explaining, "The Act and the Rule thus create an unqualified discovery and evidentiary privilege that cannot be waived by the reporting financial institution" and there "is no provision in the Act or the Rule allowing a court-order exception to the unqualified privilege");*see also Nieman v. Firstar Bank*, No. C03-4113-MWB, 2005 WL 2346998, at *6 (N. D. Iowa, September 26, 2005) (noting, "disclosure of a SAR could compromise an ongoing law enforcement investigation or reveal the methods by which financial institutions attempt to detect suspicious activity"). Therefore, the unqualified privilege is not subject to an order of the court ordering production – nothing allows for the Bank to disclose the SAR and investigative material as Defendant commands.

Despite Bank's explanation of its duty owed under the law, Defendant continues to seek Bank's disclosure of this protected information in Request No. 4 and Request No. 5:

> "Request No. 4: Bank of the Valley documentation of all communication with or regarding Aaron Luneke, including but not limited to: Emails, text messages, record of phone calls to and from Mr. Luneke, and notifications mailed to Mr. Luneke. . . Bank of the Valley has produced no correspondence, emails or text messages regarding its **internal investigation** into Luneke."

> "Request No. 5: Bank of the Valley documentation of **all internal correspondence** regarding Living Waters RE, LLC, Shine Express Wash, LLC, and Aaron T. Luneke."

(Filing No. 46, Def. Mot. to Compel at ¶ 10(b) and (c)); (Filing No. 48, Hartman Dcl., Exhibit 1 at ¶ 13). SARs as well as investigation materials related to a SAR as requested by Defendant is subject to Bank's unqualified discovery and evidentiary privilege prohibiting Bank from disclosing the same.

11

Similarly, the law prohibits Bank's disclosure of FDIC or state regulatory examination reports. Any examination or report from an agency regulator remains the property and confidential record of the regulator; a request or subpoena for any such bank examination or report shall be directed to the agency regulator. 12 C.F.R. § 309.6; NEB. REV. STAT. § 8-108; § 8-112; § 8-101.03(11). As to the FDIC, its examinations reports and supervisory correspondence is not subject to disclosure. 12 C.F.R. § 309.6.

Again, despite Bank's duty under the law, Defendant continues to seek Bank's disclosure of this protected information:

> "Request No. 14: FDIC and State of Nebraska Department of Banking Exam reports from 2015 – 2018, and 2019 – 2022 related to Aaron Luneke i. No documentation provided."

(Filing No. 46, Def. Mot. to Compel at ¶ 10(d)).

Because the Subpoena commands the Bank produce privileged material which Bank is explicitly prohibited from producing under the law, Defendant's Motion to Compel must be denied as to Requests Nos. 4, 5, and 14. Similarly, Bank's Motion to Quash should be granted as to Requests Nos. 4, 5, and 14 due to Bank's unqualified discovery and evidentiary privilege precluding the disclosure of the information subject to the requests.

**B. Defendant's Subpoena Bears all Hallmarks of a Fishing Expedition Lacking Specificity and Relevance.**

Defendant's hope to find relevant specific admissible evidence is not enough to justify a Rule 17(c) subpoena. The Rule 17(c) requirements ensures a subpoena will only be used to secure, for trial, a sharply defined group of documents. *U.S. v. Shepard*, No.

4;09 CR 423, 2010 WL 750110, at *1 (E. D. Mo., February 26, 2010); *United States v. Jackson,* 155 F.R.D. 664, 668 (D. Kan., 1994). Under Rule 17(c) Defendant must seek access to a discrete document or a discrete set of existing written materials. *Shepard,* 2010 WL 750110, at 2. "Terms like 'any and all documents' or 'including, but not limited to'" indicate the subpoena is a fishing expedition. *U.S. v. Shanahan,* 252 F.R.D. 536, 541 (E. D. Mo., 2008). A Rule 17(c) Subpoena cannot be supported based upon Defendant's mere hope of uncovering favorable evidence. *U.S. v. Bradford,* 806 F.3d 1151, 1155 (8th Cir., 2015); U.S. v. Hang, 75 F.3d 1275, 1283 (8th Cir. 1996); *United States v. Dornsbach,* No. 22-cr-00048, 2023 WL 2480976, at *5 (D. Minn., March 13, 2023). The law does not allow a Rule 17(c) Subpoena to command the production of irrelevant documentation and does not allow Defendant's to request broad categories of documents without specificity in the mere hope of discovering favorable evidence.

Defendant's Subpoena requests seek overly broad and all-encompassing information which Defendant cannot establish is relevant and specific. As articulated in Defendant's Motion to Compel, it seeks information regarding:

> "Request No. 3: **All electronic and written communication** from any employee, executive or principal of Bank of the Valley pertaining to the Living Waters RE, LLC involving prospective lenders to refinance the Living Waters RE, LLC credit. This **includes, but is not limited to**, emails, text messages, phone calls, etc. involving Jason Lavicky."

> "Request No. 4: Bank of the Valley documentation of **all communication** with or regarding Aaron Luneke, **including but not limited to**: Emails, text messages, record of phone calls to and from Mr. Luneke, and notifications mailed to Mr. Luneke."

13

"Request No. 5: Bank of the Valley documentation of **all internal correspondence** regarding Living Waters RE, LLC, Shine Express Wash, LLC, and Aaron T. Luneke."

"Request No. 6: **Complete** personnel files **including** job Descriptions, employment dates, annual reviews, corrective actions, related interests, position description, etc. for the following:
a. Jason Lavicky (President)
b. John DuBray III (Senior Executive Vice President & Chief Operations Officer)
c. Eli Vosler (Chief Credit Officer, former Credit Analyst)
d. Bill Brookhouser (Sr. Credit Analyst)
e. Micaela Wegener (Compliance Officer)
f. Aaron Luneke (Chief Financial Officer)."

"Request No. 15: The John Hancock Bank of the Valley Plan sponsor documents, specifically the Trustee listing of Authorized Users and their permissions / responsibilities."

"Request No. 16: Aaron Luneke's personal workpapers related to the CARES Act that were retained by Bank of the Valley upon termination."

(Filing No. 46, Def. Mot. to Compel at ¶ 10(a-f)) (emphasis added).

Defendant openly admits he requests broad categories of information hoping it would lead to favorable evidence. (Filing No. 48, Hartman Dcl., at ¶ 10, Exhibit 2 at pg. 7 and Exhibit 3); *see U.S. v. Bradford*, 806 F.3d 1151, 1155 (8th Cir., 2015) (explaining a mere hope the subpoena will turn up favorable evidence is not enough). Defendant also openly concedes that he broadly seeks this information for credibility and impeachment purposes – which does not justify a Rule 17(c) Subpoena. *U.S. v. Nixon*, 418 U.S. 683, 700 (1974); *see United States v. Dornsbach*, No. 22-cr-00048, 2023 WL 2480976, at *5 (D. Minn., March 13, 2023) (ruling that relevance demands more than the potential for impeachment or credibility evidence, which simply is not enough to command production under Rule 17(c)). What is more, the Subpoena on its face

14

exemplifies a fishing expedition with requests seeking "any and all documents" or "including, but not limited to", the hallmarks of a Subpoena lacking specificity with no apparent relevancy tether to the indictment. *U.S. v. Shanahan*, 252 F.R.D. 536, 541 (E. D. Mo., 2008). Furthermore, unilaterally commanding Bank produce all communication between two of Bank's high-ranking executives, Luneke and Lavicky, and all correspondence regarding Defendant lacks relevance and specificity. *Shanahan*, 252 F.R.D. at 541 (explaining the Defendant must seek access to a discrete set of materials, not a broad array).

Likewise, seeking personnel files of so many employees does nothing but highlight the Subpoena's deficiency in relevance and specificity. Additionally, Bank cannot determine what, if any, relevance the John Hancock Plan documents and "personal workpapers," bear to the indictment. Such vague requests failing to identify any discrete set of documents and any apparent relevance to the ongoing prosecution are not allowed pursuant to Rule 17(c). Clearly, Defendant has a " mere hope" to find favorable evidence without limiting the Subpoena to relevant and specific documents as required under the law. *U.S. v. Bradford*, 806 F.3d 1151, 1155 (8th Cir., 2015); *U.S. v. Hang*, 75 F.3d 1275, 1283 (8th Cir., 1996); *United States v. Dornsbach*, No. 22-cr-00048, 2023 WL 2480976, at *5 (D. Minn., March 13, 2023); *Shanahan*, 252 F.R.D. at 543. Defendant's Motion to Compel should be denied.

**C.    Defendant Inexplicably Seeks to Place the Unjustifiable and Unreasonable Burden of Costs on Bank to Comply with the Overly Broad Subpoena.**

Defendant's Subpoena fails to meet the standard for (1) relevance, (2) admissibility, and (3) specificity as required by Rule 17, and likewise the Defendant

cannot meet his burden to show: "(1) the materials could be procured through other means, before trial, by the exercise of due diligence; (2) the party cannot adequately prepare for trial without advance production of the documents, and the failure to obtain the documents may tend to unreasonably delay the trial; and (3) the request for the materials is made in good faith and not as a general 'fishing expedition." *United States v. Dornsbach*, No. 22-cr-00048, 2023 WL 2480976, at *3 (D. Minn., March 13, 2023) (explaining a court should consider these factors in addition to relevance, admissibility, and specificity). A court may quash a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive, or if the subpoena calls for privileged matter. FED. R. CRIM. P. 17(c)(2); *U.S. v. Shepard*, No. 4:09 CR 423, 2010 WL 750110, at *1 (E. D. Mo., February 26, 2010).

As established above, Defendant's Rule 17(c) is a blatant fishing expedition not grounded in relevance, admissibility, or specificity. Defendant has made no showing that he could not obtain sufficient information from other means, not the least of which is from the government. Clearly no effort was made to limit the burden on this nonparty by utilizing what must already be part of discovery in this criminal case. *See United States v. Vassar*, No. 2:05-CR-70, 2006 WL 8439723, at *2 (E. D. Tenn., Nov. 11, 2006) (quashing a subpoena due to the failure to reasonably limit the scope of documents). This fishing expedition should not be countenanced, Defendant's Motion to Compel should be denied because Defendant failed to limit any of the burden placed on nonparty Bank.

## CONCLUSION

For the reasons articulated above and in nonparty Bank's Motion to Quash, (Filing No. 47), Bank respectfully requests the Court enter an order denying Defendant's Motion to Compel, granting Bank's Motion to Quash, and awarding Bank its fees and costs related to these motions.

Dated this 28th day of March, 2025.

BANK OF THE VALLEY, Respondent,

By:  /s/ Kenneth W. Hartman
Kenneth W. Hartman (NE# 21954)
Alexandra A. Speakar (NE# 27937)
of    BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Phone: 402-344-0500
Email: khartman@bairdholm.com
Email: aspeakar@bairdholm.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word 2016 and contains 4,466 words.

I hereby certify that no generative artificial intelligence program was used in drafting this document.

/s/ Kenneth W. Hartman

17