IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON T. LUNEKE,<br><br>Defendant. | 8:24CR124<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S PROFFERED WITNESS AND MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY |

The United States of America, by and through undersigned counsel, respectfully opposes Defendant's request to present expert testimony from James Houck (Filing No. 120). The proposed testimony—addressing general carwash construction costs, industry management fees, and appraisal practices—is irrelevant to the charged conduct, would confuse the jury, and constitutes a transparent attempt to circumvent this Court's prior rulings excluding evidence that the Defendant was entitled to the loan proceeds.

This case is not about what a carwash *could have* cost or what a hypothetical contractor *might have* charged. It is about whether *these* invoices were inflated above the *actual* cost of work performed, and whether the Defendant orchestrated that inflation to obtain money by fraud. The contractors have already testified. They told the jury exactly what they were paid, what they were owed, and how much the Defendant directed them to send back. No expert testimony about general industry pricing changes those facts.

## **ARGUMENT**

### I.    **The Proposed Expert Testimony Is Irrelevant (FRE 401–402)**

The Defendant is charged with bank fraud under 18 U.S.C. § 1344 for directing Craig Foreman and Christopher Langer to inflate their invoices by approximately $305,000 over the actual cost of work performed, then receiving the excess as kickback payments. The fraud is the

gap between what these contractors actually did and what their invoices said—and the Defendant's personal receipt of the difference.

Mr. Houck's five proffered opinions all concern what *other* contractors might charge for *other* work on *other* projects. None of it speaks to whether *these* invoices were inflated above what *these* contractors were actually owed.

The Langer Electric invoice illustrates the point. Mr. Langer testified that the Defendant owed Langer Electrical $45,000 of the approximately $261,772 he charged Living Waters for actual electrical work on the car wash. He testified the Defendant directed him to invoice $150,000, and to return the balance, approximately $105,000, to the Defendant. Mr. Houck's opinion that electrical work on carwashes "can range widely from $200,000 to $600,000" (Filing No. 120 at 5) does not make any fact of consequence more or less probable. Langer did not *perform* $200,000 to $600,000 of work. He performed $261,772 of work (Def. Exh. 750), invoiced $150,000 (Def. Exh. 754), and returned $105,000 to the Defendant (Exh. 77). The same analysis applies to the Foreman Lumber invoice: Foreman's final bill was approximately $368,750 (Exh, 63), his revised invoice stated $569,700 ((Exh, 65), and he returned $200,000 to the Defendant (Exh. 88). Whether a different contractor on a different project might charge more is irrelevant to whether *this* invoice was inflated above *this* contractor's actual final bill. Fed. R. Evid. 401–402.

## II.   The Testimony is a Backdoor Entitlement Defense the Court Already Excluded

This Court has ruled that evidence the Defendant was legally entitled to the loan proceeds is inadmissible. *See* Government's Omnibus Motion in Limine, Motion No. 4; *see also United States v. Hamilton*, 499 F.3d 734, 737 (7th Cir. 2007) ("entitlement" not a defense where funds obtained through false pretenses).

The defense proffer is a repackaged version of the same argument. Despite representing that it "does not intend to solicit evidence directly . . . as to the value of Defendant's work" (Filing

No. 120 at 8), the proffer does exactly that through indirection. Defendant plainly admits that "[e]vidence and testimony supporting Defendant's position that the work he did was worth $305,000 is essential to his defense." *Id.* The opinion that "[i]ndustry standard for similar carwash builds is a project management fee of 10–15%" (Filing No. 120 at 4) is designed for one purpose: to suggest that the approximately $305,000 in kickback payments was a legitimate management fee Luneke was owed.

But there was no management fee. There was no consulting agreement or developer fee arrangement documented at the time of these transactions. The Defendant directed contractors to inflate their invoices and funnel the excess back to him through their bank accounts. The contractors testified to this directly. Permitting an after-the-fact expert to recharacterize kickback payments as "industry-standard management fees" would undermine the Court's prior rulings and confuse the jury about what is and is not a defense to bank fraud—especially in the face of Defendant's own statements to law enforcement that he received the money as payment for electrical and construction work.

## III.    The Proffer Contradicts Defense Counsel's Representations to the Court

During the Court's colloquy, defense counsel represented that the expert would be "more general" and would *not* "opine on the value of work that Mr. [Luneke] has done." The written proffer goes considerably further. It argues that the "money in those invoices that went to Defendant represents actual construction costs," that the Defendant's work "is routinely reflected as a general contractor fee, a management fee, a consultant fee, or a developer fee," and that the Defendant's purpose "was to accurately account for construction costs in order to support an accurate appraisal." (Filing No. 120 at 7.) The proffer then ties this to "*mens rea*" and whether "the

3

invoices reflected actual value that he brought to the project." (*Id.* at 8.) This is not general industry education—it is an argument that the Defendant was owed the money.

### IV. The Testimony Fails to "Fit" Under Rule 702 and Should Be Excluded Under Rule 403

Even where an expert is qualified, Rule 702 requires that testimony be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). Nothing in the proffer indicates that Mr. Houck reviewed the actual invoices, analyzed the work Foreman and Langer performed relative to their invoices, or examined the bank records showing the kickback payments. His opinions are untethered to the facts the jury must decide.

Under Rule 403, the testimony should also be excluded because its minimal probative value is substantially outweighed by the danger of confusing the issues and misleading the jury. The central question is whether these specific invoices were inflated above what these specific contractors were owed. Expert testimony about general carwash construction costs would invite the jury to evaluate a question not before them: whether the *total project* could have cost more if different contractors had charged more, or if the Defendant had been paid through legitimate channels. As the Court observed during the colloquy, "it just gets really confusing for the jury if . . . we spent two days on so-called experts who were giving information about car washes that could have been."

Additionally, the jury does not need expert assistance to resolve the factual dispute here. The contractors told the jury what they did, what they were owed, what they invoiced, and how much they returned to the Defendant. Comparing an invoice amount to the actual cost of work is within the ordinary understanding of jurors. Fed. R. Evid. 702(a). Defendant cites no supporting authority that this witness should be allowed to offer opinion testimony in this case.

V.    **Good Faith Requires Honest Intentions—Meaning Honest Belief in the Truth of the Representations**

"The essence of a good-faith defense is that one who acts with honest intentions cannot be convicted of a crime requiring fraudulent intent." *United States v. Asomani*, 7 F.4th 749, 752 (8th Cir. 2021). The Defendant argues that the value of the work he did at the car wash is critical to evaluating whether he "had a good faith belief that the invoices reflected actual value that he brought to the project." (Filing No. 120 at 8). But that is not the question that needs to be answered. It is the "honest good-faith belief in the truth of the misrepresentations may negate intent to defraud." *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986). The representation the Defendant made to Bank of the Valley when he submitted the $569,700 Foreman Lumber invoice, and $150,000 Langer Electric invoice, was that those companies were owed money for work *Foreman Lumber* and *Langer Electric* completed.  That is why the Defendant told federal agents he received the money from Mr. Langer and Mr. Foreman was for "the services that I rendered and what I did through them as a subcontractor, albeit lacking documentation, that is legitimate." Luneke Interview at 2:54:28. This statement will be introduced during trial and offered as evidence. Mr. Luneke goes on to admit the bank did not know about his alleged arrangements with Mr. Foreman and Mr. Langer—arrangements they both denied during the trial:

> I was fully transparent with everyone at that bank on everything I was doing with the one exception of what you're saying are two transactions. And those two transactions, if I would've had an astro on that said, Aaron Luneke is receiving X, and then if I would've sent a QuickBooks invoice or a spreadsheet over that says, Chris Langer, you owe me this, or Craig for me, you owe me this, then you're saying

5

this conversation wouldn't be happening right now. And if that is true, then great lesson learned.

*Id.* at 1:30:49. With that, the Government agrees. And yet, the Defendant now argues he acted in good faith. He admitted the invoices are false. He stated he worked as a subcontractor. He believed and still believes he is entitled to the money. It is not a defense he is entitled to put before the jury.

## CONCLUSION

The United States respectfully requests that the Court exclude the proposed expert testimony of James Houck. The testimony is irrelevant, fails the "fit" requirement of Rule 702, constitutes a backdoor entitlement defense, and would confuse and mislead the jury in violation of Rule 403. Further, the Court should now allow the Defendant from improperly bolstering any witness's testimony by referring to them as experts or asking for their "expert opinions."

In the alternative, should the Court permit any portion of Mr. Houck's testimony, the United States requests: (1) the opportunity to voir dire Mr. Houck outside the jury's presence; (2) a limiting instruction that the jury may not consider the testimony as evidence that the Defendant was entitled to any portion of the loan proceeds or that the invoices were not inflated; and (3) preclusion of any testimony that directly or indirectly assigns a monetary value to the Defendant's work on the carwash.

DATED this 28th day of February, 2026.

UNITED STATES OF AMERICA, Plaintiff


LESLEY A. WOODS,
United States Attorney
District of Nebraska

6

By:    s/ Alejandro Abreu
       Alejandro Abreu, OH Bar #0089477
       Special Assistant U.S. Attorney
       1620 Dodge Street, Suite 1400
       Omaha, NE  68102-1506
       Tel: (213) 828-0023
       E-mail:  alejandro.abreu@usdoj.gov

       s/ Sarah A. Hinrichs
       SARAH A. HINRICHS, #24335
       Assistant U.S. Attorney
       1620 Dodge Street, Suite 1400
       Omaha, NE  68102-1506
       Tel:  (402) 661-3700
       Fax:  (402) 661-3084
       E-mail:  Sarah.Hinrichs@usdoj.gov

7

8

CERTIFICATE OF SERVICE

     I hereby certify that on February 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants.  I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants:  None.

s /Alejandro Abreu
Special Assistant U.S. Attorney

8